373 So.2d 565 (1979)
HUFFMAN-EURO MOTORS, INC., Plaintiff-Appellant,
v.
PHYSICAL THERAPY SERVICES, LTD., Defendant-Appellee.
No. 7066.
Court of Appeal of Louisiana, Third Circuit.
June 20, 1979.
Rehearing Denied August 15, 1979.
*566 Kennedy & Yeager, Ralph W. Kennedy, Alexandria, for plaintiff-defendant in reconvention-appellant.
Provosty, Sadler & deLaunay, Michael T. Pulaski, Alexandria, for defendant-appellant.
Devillier & Ardoin, Ellis Daigle, Eunice, for defendant-plaintiff in reconvention-appellee-appellant.
Before WATSON, FORET and CUTRER, JJ.
WATSON, Judge.
This matter originated as a suit on open account by plaintiff, Huffman-Euro Motors, Inc., against defendant, Physical Therapy Services, Ltd., to recover the sum of $1,512.89 allegedly due for transmission repairs to a 1974 Volvo automobile. Defendant reconvened, contending, in essence, that the transmission had a redhibitory vice. Also named as defendant in reconvention was Volvo of America Corporation, the U.S. distributor for Volvo automobiles.
The trial court overruled an exception of prescription by Volvo; gave Huffman judgment for the amount claimed on open account, $1,512.89; awarded Physical Therapy Services, Ltd. judgment against Huffman and Volvo, in solido, for $1,994.94 as a reduction in the purchase price, judgment against Volvo for $750 in attorney's fees and judgment against Huffman for $92.40 in expenses. Costs were assessed 20% to Physical Therapy, 40% to Huffman and 40% to Volvo. Volvo of America Corporation has dismissed its appeal, but both Huffman and Physical Therapy have perfected suspensive appeals, the first being that of Huffman who is therefore designated the appellant.
FACTS
The 1974 Volvo was sold by Huffman-Euro Motors, Inc. to Roger C. Black on April 30, 1975, for $7,698.62. The automobile was new and had 12 miles on the odometer. At that time, Black was employed elsewhere but he subsequently became a *567 salesman for Huffman. In October of 1975, while employed by Huffman, Black sold Joseph P. Cashen and Ron Driggs of Physical Therapy two Volvo automobiles, one being the 1974 model he owned personally. The second automobile, a 1975 Volvo, is immaterial and references to the Volvo henceforth are to the 1974 model, which was purchased for Cashen's use. At the time of the transfer from Black to Physical Therapy Services, Ltd. the automobile had 5,040 miles on the odometer and was sold for $5,660. Shortly before the sale, on September 10, 1975, Black had made a warranty claim against Volvo in regard to the transmission. Black did not advise the representatives of Physical Therapy of this fact. Black stated he believed the transmission to be sound at the time of the sale. There had been prior transmission problems, including a complete replacement on June 11, 1975. The first warranty claim concerning the transmission was on February 28, 1975, prior to the initial sale of the automobile to Black.
Clyde Alexander, area service representative for Volvo of America, testified from a computer printout that all warranty work on the drive line and transmission is classified in group four. He identified five warranty claims in the drive line and transmission area which were paid on this particular Volvo. The dates are shown as 2/28/75, 6/6/75, 6/11/75, 7/15/75, and 9/10/75. Alexander denied that there was anything unusual about the first transmission repair being performed on an automobile with only 12 miles on the odometer. Alexander testified that the transmission repair on September 10, 1975, consisted of the replacement of a valve body, a gasket set and transmission fluid. He identified the valve body as:
"... the brain center of your automatic transmission. It directs the different passages, it's like a maze on the inside, and you have valves which function back and forth and direct the oil flows to the different parts of your transmission." (TR. 140).
The Volvo warranty booklet (Physical Therapy Exhibit # 1) states at page 6:
"Volvo replacement parts and accessories are warranted for 12 months from the time of purchase and/or installation. The warranty covers the repair or replacement of any item or components found defective because of workmanship or material."
At the time of the purchase by Physical Therapy, in October of 1975, the manufacturer's warranty was still in effect and the representatives of Physical Therapy were advised that it would be transferred to them. The manufacturer's warranty extended to April 30, 1976. According to Forest C. Thomas, the Huffman service manager, a complete new transmission had been installed on June 11, 1975, and the warranty on the transmission extended for an additional period of 12 months or 12,000 miles from that date.
Black continued to have problems. After the transmission replacement in June of 1975, a gasket set was replaced and the automatic transmission fluid was filled in July. Then, in September, the valve body was replaced and another gasket set put in. Transmission fluid was again added in September. The July warranty claim states:
"... the automatic transmission blowing fluid by dip stick, found excessive pressure and evidence of water in transmission, R & R transmission and remove valve body assembly, clean out valve body and eliminate stick and valve problem." (TR. 148).
The radiator was thus found to be leaking into the transmission. Subsequently, on August 5, 1976, after the sale to Physical Therapy, radiator water was leaking into the transmission; the radiator was replaced; and the transmission repaired. It is this August repair which forms the major part of Huffman's claim on open account, the charge being $1,494.94. Alexander admitted it was most unlikely that one vehicle would have identical problems on these separate dates.
When the transmission was overhauled in June of 1975, the work was done by representatives from Volvo's Houston office. *568 When the transmission did not operate correctly, they authorized its replacement with a totally new transmission under the supervision of another Volvo service representative, Bill Dennis.
Service manager Thomas testified that he was familiar with the repair work done on the Volvo. The August transmission repair for which Physical Therapy refused to pay was done under repair order no. 1256, when the automobile had 20,747 miles on the odometer. There was a major overhaul of the automatic transmission. It was not billed as warranty work. Thomas did advise Cashen that he would attempt to have Volvo absorb the cost under warranty but did not promise that Volvo would do so. The next transmission work was on October 20, 1976, when the mileage was 23,735.
James Robert Glash, general manager and corporate officer of Huffman-Euro Motors, Inc., testified that the two purchasers from Physical Therapy were advised that the Volvo was not being sold by Huffman, but Huffman would honor the remaining manufacturer's warranty. Huffman has had no other difficulties with Physical Therapy on payment of bills. Cashen advised Huffman's manager that he thought the invoices in dispute, $1,494.94, $13.75 and $4.20, or a total of $1,512.89 for transmission repairs, should be covered under warranty. Glash asked Volvo to review the question of a manufacturer's warranty on these repairs.
Cashen testified that he commenced having transmission difficulties with the Volvo in December of 1975 after its purchase in October of that year. The automobile was sent to Huffman for a transmission check but they found nothing wrong. The automobile subsequently became unsafe to drive and it was taken to Huffman in January of 1976 because the transmission was slipping and the car would not go into forward gear. The automobile was kept for five weeks and Huffman provided Cashen with an automobile to use in the interim. Subsequently, in the summer of 1976, the car began leaking transmission fluid and was taken to Huffman again for a transmission check. Cashen was advised nothing was wrong with the transmission. Huffman overhauled the transmission in August of 1976, keeping the car for three weeks and loaning Cashen another automobile during the repair period. Subsequently, in October of 1976, the transmission caught on fire and the car was towed to the Mobil Oil Station in Rayne at a charge of $21. Cashen then towed it to Huffman in Alexandria after renting a tow truck from Eunice Rental Service for $71.40. Huffman changed the transmission fluid. After the October fire, the automobile transmission did not shift smoothly but was otherwise operable. Then, in February of 1978, the car began leaking transmission fluid and developed more severe problems similar to the original ones. Placing the car in forward gear would accelerate the automobile; the gear would slip and make a grinding noise. Huffman's employees advised Cashen that the problem was not with the transmission. Cashen then took the car to Aamco Transmissions in Lafayette where they showed him burned parts in the pan under the transmission. Aamco repaired the transmission for the sum of $707.50. The repair took approximately three weeks and Cashen rented an automobile during that time for $343.96. Since the repairs by Aamco in February of 1978, Cashen has had no further transmission problems with the automobile.
Henry Patterson, owner of the Aamco franchise in Lafayette, testified that he checked the Volvo's transmission for Cashen on February 21, 1978. The transmission fluid had a burnt odor. The transmission made a slipping and grinding noise in neutral. It would slip into first range and then make a noise going from first to second gear. In the second range it would also slip and made a noise going into the higher gear. It was erratic and the problems did not occur at the same speed or with the same power pressure. The reverse was late in responding. Patterson removed the pan under the transmission and found bits of metal, a piece of plastic and a burnt oil odor. His employees then dismantled the transmission and found the following:

*569 "The planetary gear was worn out, the bearing was gone completely, it had cut, I'd say, 1/8 of an inch in the back side of it and had torn up the sun gear that rides inside. The bearing part of the lining was off the back, the reverse clutches were also in the same shape, there were linings coming loose, there was metal imbedded in all of it, it couldn't help but be in the manner it was in. The oil itself that was left in it looked like a silver lining, if you know what I mean." (TR. 102, 103).
There were very fine particles of metal in the oil which caused the silver color. The unit, as a whole, was classified as in extreme condition. Aamco uses a three classification system and this is the worst. Patterson testified that the burned odor was probably caused by heat and friction in the transmission. At the time of the Aamco repair, the odometer on the automobile had 48,890 miles. Although an expert in automobile transmissions, Patterson could not specify the reason for the transmission failure. In his opinion, the automobile was not operable at the time of his repair.
CONCLUSION
The evidence is overwhelming that the Volvo purchased by Physical Therapy from Black was defective in the transmission area. Clearly, the defect was such that Physical Therapy would not have purchased it had the buyer been aware of the inconvenience and trouble which would ensue. LSA-C.C. art. 2520.[1] The defect was not apparent. LSA-C.C. art. 2521.[2] The seller, Black, admitted that he did not tell the buyer that the automobile had had repeated transmission problems. LSA-C.C. art. 2522.[3] There is no question that the vice existed before the sale. LSA-C.C. art. 2530.[4] Black, the seller, knew of the vice in the automobile, omitted to declare it and is, therefore, not only liable for the amount of the repairs asked by Physical Therapy, LSA-C.C. art. 2541,[5] but also for expenses, attorney's fees and damages. LSA-C.C. art. 2545.[6] Black is not named as a defendant. However, Huffman, the original retailer, as well as the manufacturer, Volvo, are liable to Physical Therapy. Knowledge of the vice is imputed to Volvo, the manufacturer. Alexander v. Burroughs Corp., 359 So.2d 607 (La., 1978). Volvo had more than imputed knowledge; its factory representatives knew that the transmission was defective. The evidence clearly establishes that Huffman's employees, as well as Black, knew of the automobile's defective transmission. The difficulties with the transmission dated back to the car's delivery to the dealership, and a reasonable mind must conclude that the later problems experienced by Cashen were part and parcel of the original problem. This fact must have been known to Huffman's employees but they *570 failed to repair the vehicle and charged Cashen for their fruitless efforts. The ultimate purchaser, Physical Therapy, was subrogated to Black's rights and actions of warranty against Huffman. LSA-C.C. art. 2503.[7] It is well established that Louisiana protects the consumer by allowing a consumer without privity to recover against the original seller. Media Pro. Consult., Inc. v. Mercedes-Benz of N.A., Inc., 262 La. 80, 262 So.2d 377 (1972).
Here, we have not only an implied warranty of fitness, but a specific manufacturer's warranty which guaranteed the transmission for 12 months after its replacement in June of 1975. This 12 month warranty on the transmission extended through June 11, 1976. Well before June 11, 1976, the transmission difficulties were apparent. Despite being given every opportunity to repair the problem, Huffman failed to do so.
Defendant, Physical Therapy was awarded $2,087.34 by the trial court. The total amount awarded is a reasonable sum for reduction in the purchase price and damages. This judgment will be affirmed. There will be further judgment in favor of Physical Therapy for reasonable attorney's fees for services on appeal, which are fixed at $350.[8]
The trial court erred in giving Huffman judgment for the repair work done to the transmission in the amount of $1,512.89, after finding that the work was defective. This repair was necessitated by the continuing defects in the transmission. The judgment of the trial court allowing plaintiff this amount will be reversed and set aside. The trial court judgment will also be reversed and set aside insofar as it casts Physical Therapy Services, Ltd. for 20% of costs in the trial court.
For the foregoing reasons, the judgment of the trial court herein is affirmed in its award to Physical Therapy Services, Ltd. and against Huffman-Euro Motors, Inc. and Volvo of America Corporation in solido, in the sum of $1,994.94 and in its award in favor of Physical Therapy Services, Ltd. and against Volvo of America Corporation for attorney's fees in the sum of $750 and in its award to Physical Therapy Services, Ltd. and against Huffman-Euro Motors, Inc. in the sum of $92.40.
The judgment of the trial court herein is reversed insofar as it casts Physical Therapy Services, Ltd. for 20% of all costs of trial.
Costs of trial are assessed equally between Huffman-Euro Motors, Inc. and Volvo of America Corporation.
It is ORDERED, ADJUDGED and DECREED that there be further judgment herein in favor of Physical Therapy Services, Ltd. and against Huffman-Euro Motors, Inc. in the sum of $350 as reasonable attorney's fees for services on appeal.[9]
The judgment of the trial court is reversed and set aside insofar as it awarded judgment in favor of Huffman-Euro Motors, Inc. and against Physical Therapy Services, Ltd. in the sum of $1,512.89.
All costs of appeal are assessed against Huffman-Euro Motors, Inc.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.
NOTES
[1] LSA-C.C. art. 2520:

"Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice."
[2] LSA-C.C. art. 2521:

"Apparent defects, that is, such as the buyer might have discovered by simple inspection, are not among the number of redhibitory vices."
[3] LSA-C.C. art. 2522:

"The buyer can not institute the redhibitory action, on account of the latent defects which the seller has declared to him before or at the time of the sale. Testimonial proof of this declaration may be received."
[4] LSA-C.C. art. 2530:

"The buyer who institutes the redhibitory action, must prove that the vice existed before the sale was made to him. If the vice has made its appearance within three days immediately following the sale, it is presumed to have existed before the sale."
[5] LSA-C.C. art. 2541:

"Whether the defect in the thing sold be such as to render it useless and altogether unsuited to its purpose, or whether it be such as merely to diminish the value, the buyer may limit his demand to the reduction of the price."
[6] LSA-C.C. art. 2545:

"The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of price and repayment of the expenses, including reasonable attorneys' fees, is answerable to the buyer in damages."
[7] LSA-C.C. art. 2503:

"The parties may, by particular agreement, add to the obligation of warranty, which results of right from the sale, or diminish its effect; they may even agree that the seller shall not be subject to any warranty.
But whether warranty be excluded or not the buyer shall become subrogated to the seller's rights and actions in warranty against all others."
[8] There was no oral argument presented.
[9] Volvo abandoned its appeal.