478 So.2d 741 (1985)
Joseph Leslie THERIOT, Plaintiff-Appellee,
v.
COMMERCIAL UNION INSURANCE COMPANY, et al., Defendant-Appellant.
No. 84-845.
Court of Appeal of Louisiana, Third Circuit.
November 7, 1985.
*742 Brame, Bergstedt and Brame, David B. McCain, Lake Charles, for defendant-appellant.
Jones, Jones and Alexander, Jennifer Jones Bercier, Cameron, for plaintiff-appellee.
Cox, Cox, Townsley and Fowler, Wm. N. Cox, Lake Charles, for defendant-appellee.
Before GUIDRY, STOKER and KING, JJ.
GUIDRY, Judge.
Joseph Leslie Theriot brought suit against his insurer, Commercial Union Insurance Company (hereafter referred to as Commercial Union), and Jack's Auto Parts and Salvage, Inc. (hereafter referred to as Jack's). The plaintiff's action against his insurer was contractual; his action against Jack's was premised on the theory of redhibition. The trial court rendered judgment in favor of the plaintiff and against the defendant, Commercial Union Insurance Company, in the sum of $2,668.00 plus costs and interest from May 6, 1983. The amount awarded included the estimated cost to repair the plaintiff's engine plus a storage fee of $868.00. Attorney's fees and penalties against the insurance company were rejected. Plaintiff's demand against Jack's was rejected and dismissed. Costs of the proceedings were assessed to Commercial Union.
*743 Commercial Union suspensively appealed. Neither plaintiff nor Jack's appealed or answered Commercial Union's appeal.

FACTS
Plaintiff, Joseph Leslie Theriot, was the owner of a 1979 Ford LTD automobile. He carried auto insurance with defendant, Commercial Union.
Sometime during the fall of 1982, the engine in the LTD malfunctioned in such a way that suggested vandalism. The engine was damaged as a result of lubrication failure which was apparently caused by the introduction of some foreign substance. When the plaintiff became aware of a possible engine problem, he brought the car to Donald Kelley, a mechanic for Shoreline Supply Company of Cameron, Louisiana (hereafter referred to as Shoreline). Kelley was of the opinion that the engine had been vandalized by the introduction of some sort of foreign substance into the engine oil.
Plaintiff then filed a claim with his insurer, Commercial Union. Commercial Union did not contest the claim of vandalism. Instead, Commercial Union hired Crawford and Company to appraise and settle the claim. Mr. Morris Ledet, employed by Crawford, was assigned the task.
After Ledet made a cursory inspection of the engine, he prepared an appraisal report. The appraisal report, and Ledet's later testimony, indicates that he contacted Jack's to obtain a price on a replacement engine and contacted Shoreline to obtain an estimate on the labor costs for installation.
Ledet later had a check issued by Commercial Union to the plaintiff for the exact amount of the particular engine to be purchased from Jack's plus installation costs, as per Shoreline's estimate. The plaintiff apparently endorsed the check he received from Commercial Union over to Shoreline so that Shoreline could obtain the replacement engine from Jack's. The invoice from Jack's was introduced into evidence. It does not show the purchaser to be the plaintiff, but instead shows the purchaser to be Shoreline Supply. However, the plaintiff testified that Ledet made all the arrangements for the purchase of the replacement engine. Also, plaintiff's wife testified, "Well, he (Ledet) purchased the engine. We didn't. Once he had the engine purchased, they contacted us. And then my husband picked up the check at the insurance company here, and went and brought it, turned it over to Donald Kelley (the Shoreline mechanic) and they picked up the engine from Jack's."
The installation of the replacement engine did not solve the plaintiff's problem. The new engine likewise malfunctioned. Donald Kelley, the mechanic from Shoreline, testified that he closely inspected the replacement engine, prior to installation in plaintiff's automobile, and determined that it was in worse condition than the original. He told his employer and Ledet of the situation but was instructed by them to proceed with the installation.
After the engine was replaced, the car started to burn oil at a rate which was indicative of a serious problem. It was installed in November of 1982 and spent a great amount of time in the shop between then and April of the following year, at which time the engine completely failed. It was conceded that the replacement engine was in a ruined state.
The plaintiff then demanded of Commercial Union and Jack's the sum of $1800.00, i.e., the amount of the repair estimate Donald Kelley gave to the plaintiff for a second replacement. Both defendants refused to comply. This suit followed.
In written reasons for judgment, the trial court determined that the replacement engine was redhibitorily defective. However, he denied plaintiff judgment against Jack's, concluding that plaintiff was not the purchaser of the engine and consequently had no right to claim redhibition against the seller, Jack's. The trial court further concluded that Commercial Union "elected to repair" the vehicle rather than to settle the claim by payment; its repair efforts were totally unsatisfactory; and, because of the insurer's breach of its obligation to repair, *744 plaintiff was entitled to recover the repair costs plus automobile storage charges. Judgment was rendered as aforestated.
Appellant contends that the trial court erred in its conclusions that (1) Commercial Union "elected to repair" rather than make payment in settlement of plaintiff's claim; (2) Commercial Union was the purchaser of the defective engine; (3) plaintiff did not have a right of action in redhibition against Jack's; and, (4) in awarding storage fees since plaintiff did not pray for same and timely objection was made to such evidence during trial. We will discuss appellant's contentions in the order set forth above.

DID COMMERCIAL UNION "ELECT TO REPAIR" AND IN FURTHERANCE OF THAT ELECTION PURCHASE THE REPLACEMENT ENGINE?
Commercial Union contends that, under the insurance policy, it elected to pay the claim made by the plaintiff. Plaintiff contends that Commercial Union elected to purchase the replacement engine and have the car repaired.
The Commercial Union insurance policy which covered the plaintiff's automobile states, in pertinent part:
"The company may PAY for the loss in money; or may REPAIR or REPLACE the damaged or stolen property ..." (Emphasis supplied).
The policy also stated:
"The limit of the Company's liability for loss shall not exceed the actual cash value of the property, ..., nor what it would then cost to REPAIR or REPLACE the property, or such part thereof with another of LIKE KIND and QUALITY ..." (Emphasis supplied).
If Commercial Union elected to repair the vehicle, then it had a duty to make the repairs with like kind and quality parts. The trial court found that Commercial Union intended to replace the damaged property rather than pay for the loss in money. A trial court's finding of fact will not be altered unless it can be shown from the evidence and testimony that the trial court was clearly wrong. The trial judge has a significant advantage in making factual determinations since he is able to hear the testimony, examine the documentary evidence, and observe the demeanor of the witnesses.
After carefully reviewing the record, we determine that the trial judge was not clearly wrong in concluding that plaintiff established, by a preponderance of the evidence, that Commercial Union decided to replace the engine rather than pay for the loss in money. Important in this determination is the fact that Ledet, acting for Commercial Union through Crawford and Company, apparently located a replacement engine; determined the price of that engine; and, determined the installation costs. After this, Commercial Union issued a check for the exact amount needed to purchase and install the engine. The plaintiff then merely endorsed the check over to Shoreline, who then obtained the engine from Jack's. Even though the appraisal form submitted by Ledet did not bind Commercial Union to repair the engine, their issuing the check in the exact amount indicated on the appraisal could have reasonably led the trial court to conclude that Commercial Union was sanctioning the replacement of the vandalized engine. Also, the testimony of the plaintiff, Donald Kelley, the Shoreline mechanic, and even Ledet's testimony indicates that Commercial Union elected to replace the engine.
Since Commercial Union elected to replace the engine, it had a contractual duty to replace it with an engine of like kind and quality. Donald Kelley, who was accepted by the court as an expert in auto mechanics, testified that he informed Ledet and his employer, before placing the engine in the engine compartment, that the replacement engine was worse than the vandalized engine. He testified that, "... oil was pouring out all the oil seals ... It was coming out everywhere." He also stated that Ledet and his employer still told him to install the replacement engine even after he had informed them of its condition. From this and other testimony, it was not *745 clearly wrong for the trial court to conclude that Commercial Union had not provided a replacement engine of like kind and quality. It was also not clearly wrong for the trial court to accept the $1800 estimate from Donald Kelley as the cost to completely repair the automobile.
For the reasons hereafter stated in our discussion of plaintiff's right to claim redhibition as against Jack's, we need not categorically decide whether Commercial Union was the purchaser of the defective engine.

WAS JACK'S LIABLE IN REDHIBITION TO PLAINTIFF?
Commercial Union contends that the trial judge should have found Jack's to be liable to plaintiff under the theory of redhibition since he specifically held that the engine was redhibitorily defective.
When an unsuccessful co-defendant appeals from a judgment, his appeal can bring up for review his right to enforce contribution against other defendants. The unsuccessful co-defendant may demand the reversal of that part of the judgment which rejects plaintiff's demands against other defendants, so that the appellant may minimize his loss through the enforcement of contribution against the other defendants. Also, it is not necessary for a co-defendant to file a third party demand against the other defendant in order to preserve the right to have the matter reviewed on appeal, when the plaintiff has already named the other defendant as a party defendant.[1]Vidrine v. Simoneaux, 145 So.2d 400 (La.App. 3rd Cir. 1962), writ denied; Gorum v. Pritchard, 173 So.2d 308 (La.App. 3rd Cir.1965), writ denied, 247 La. 1028, 175 So.2d 644 (1965); Emmons v. Agricultural Insurance Co., 245 La. 411, 158 So.2d 594 (1963), on remand, 163 So.2d 812 (La.App. 4th Cir. 1964); Wheat v. Ford, Bacon & Davis Construction Corp., 424 So.2d 293 (La. App. 1st Cir.1982), writ denied, 429 So.2d 155 and 158 (La.1983). We therefore conclude that Commercial Union has the right to question on appeal the correctness of the trial court's dismissal of plaintiff's redhibitory action against Jack's.
The trial judge, in his written reasons for judgment, dismissed the redhibition action between the plaintiff and Jack's because "the redhibition action must be brought by the purchaser against the seller." Appellant, Commercial Union, urges that this was error. We agree.
Civil Code Article 2503 states, in pertinent part, that, "whether warranty be excluded or not the buyer shall become subrogated to the seller's rights and actions in warranty against all others." This language has been interpreted to mean that a consumer/purchaser without privity may recover against the original seller in redhibition for breach of warranty. Media Pro Consult., Inc. v. Mercedes-Benz of N.A., Inc., 262 La. 80, 262 So.2d 377 (1972), on remand, 264 So.2d 686 (La.App. 4th Cir.1972); Huffman-Euro Motors v. Physical Therapy, Etc., 373 So.2d 565 (La.App. 3rd Cir.1979); Landry v. Baton Rouge Lumber Co., 434 So.2d 1144 (La.App. 1st Cir.1983).
Landry, supra, had facts strikingly similar to the present case. In Landry, a contractor purchased some siding from the defendant to put on the plaintiff's house. *746 The siding was delivered to the contractor and the invoice was in the contractor's name. The homeowner/consumer was not actively involved in the siding purchase. Thus, the homeowner (plaintiff) did not have privity with the seller-defendant. However, he was allowed to bring the redhibition action against the original seller.
In the present case, either Commercial Union or Shoreline purchased the replacement engine from Jack's. However, irrespective of who purchased the engine, the consumer/user of the engine was the plaintiff, Mr. Theriot. Since the plaintiff was the consumer of the engine, he can recover against Jack's in redhibition, even though he was not in contractual privity with Jack's, because under LSA-C.C. Art. 2503, and the previously cited cases, the plaintiff was subrogated to the rights of the original purchaser.
During the trial, the general manager from Jack's testified that all of their sales were covered by a three-day written warranty and a 30-day verbal warranty. We must next decide whether either of these warranty limitations will affect the plaintiff's redhibition action.
The waiver of the implied warranty against redhibitory vices must be written in clear and unambiguous terms, must be contained in the act of sale, and must either be brought to the attention of the buyer or explained to him. LSA-C.C. Art. 2520; Tuttle v. Lowrey Chevrolet, Inc., 424 So.2d 1258 (La.App. 3rd Cir.1982); Jeansonne v. Leon Pickard Chevrolet, 447 So.2d 551 (La.App. 1st Cir.1984); General Motors Acceptance Corp. v. Johnson, 426 So.2d 691 (La.App. 1st Cir.1982), writ denied, 433 So.2d 151 (La.1983).
During the testimony of David Turner, the general manager of Jack's, it was determined that Jack's extended a 30-day oral warranty as well as the written three-day warranty on all sales. In this case, there was no testimony that indicated that the limited warranty was brought to the attention of the buyer or explained to him. Also, an inspection of the invoice shows that the signature needed for the three-day invoice warranty was never obtained. From this, we conclude that Jack's never did effectively limit the implied redhibition warranty.
There is ample evidence in the record supporting the conclusion that the replacement engine was redhibitorily defective.
In sum, for the reasons stated, we conclude that Jack's and Commercial Union are solidarily liable to the plaintiff. The obligation may be in solido even though the obligations of the obligors arise from separate acts or for different reasons. La. C.C. Arts. 2091, 2092, repealed by Acts 1984, No. 331.[2]Hoefly v. Government Employees Ins. Co., 418 So.2d 575 (La. 1982); Pearson v. Hartford Accident & Ind. Co., 281 So.2d 724 (La.1973), on remand, 345 So.2d 123 (La.App. 1st Cir. 1977), writ denied, 347 So.2d 255 (La.1977); Kirtland v. J. Ray McDermott & Co., 568 F.2d 1166, 1171 (5th Cir.1978); Developments in the Law, 1979-1980Obligations, 41 La.L.Rev. 355, 357 (1981).
In this case, we need not reserve unto Commercial Union the right to demand contribution from Jack's in a separate proceeding, since all interested parties were represented on the merits at trial and no useful purpose would be served by requiring a separate proceeding to determine an issue which we resolve here. However, we cannot render a judgment against Jack's directly in favor of plaintiff since his failure to perfect a separate appeal against Jack's has allowed the trial court judgment dismissing Jack's to become final. Albeit, in *747 our view, we can condemn Commercial Union and Jack's as solidary obligors and order contribution by Jack's to Commercial Union.

WAS THE TRIAL COURT CORRECT IN AWARDING STORAGE FEES?
Appellant argues that the trial judge was clearly wrong in granting an $868.00 award for storage fees since the plaintiff did not ask for such relief in his pleadings, and the appellant objected to the introduction of such evidence during the trial. The plaintiff contends that the trial court's decision was correct since the evidence on the storage fees was received before objection was made.
La. C.C.P. Art. 1154 states in pertinent part:
"If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby, and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense on the merits."
During the trial, the following colloquy occurred:
"Q. Now, I asked you to bring some things down here with you today, and I think what you're talking about now is your bill for storage of the car.
A. Right. That was up until the 3rd. That's $4.00 a day at 217 days.
Q. Your rate is $4.00 per day?
A. That's $4.00 per day.
Mr. McCain: Your Honor, I would object to any evidence on storage charges, as it wasn't pleaded.
The Court: Sustained."
A timely objection coupled with failure to move for an amendment of the pleadings is fatal to an issue not raised by the pleadings. Gar Real Estate and Ins. Agency v. Mitchell, 380 So.2d 108 (La.App. 1st Cir.1979).
In the present case, the petition provided no notice whatsoever to the defendant that the plaintiff claimed or intended to introduce evidence pertaining to storage fees. From a reading of the transcript, we believe that a timely objection to the evidence was made. Since a timely objection was made and the judge did not grant a motion to amend the petition, we believe that the pleadings were not expanded. Hence, the trial judge was clearly wrong in granting the plaintiff an award for the storage fees. Roy v. Commercial Union Assur. Co., 385 So.2d 1273 (La.App. 3rd Cir.1980); Wanda Petroleum Co. v. Mac Drilling Inc., 353 So.2d 474 (La.App. 3rd Cir.1978), writ denied, 355 So.2d 258 (La.1978). Therefore, the judgment of the trial court will be amended to delete any award to plaintiff for storage fees.
For the foregoing reasons, the judgment of the trial court is affirmed in part, reversed in part, amended in part, and recast as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of the plaintiff, JOHN LESLIE THERIOT, and against the defendant, COMMERCIAL UNION INSURANCE COMPANY, for the sum of EIGHTEEN HUNDRED AND NO/100 ($1800.00) DOLLARS plus legal interest from date of judicial demand until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that JACK'S AUTO PARTS & SALVAGE, INC. is condemned to contribute to COMMERCIAL UNION INSURANCE COMPANY one-half (1/2) of the amount to be paid by COMMERCIAL UNION INSURANCE COMPANY to JOSEPH LESLIE THERIOT and to share equally in the payment of all costs, both at the trial level and on appeal.
AFFIRMED IN PART; REVERSED IN PART; AMENDED IN PART, AND RENDERED.
NOTES
[1] LSA-C.C. Art. 2103 which was in force at the time suit was filed reads in pertinent part:

"A defendant who is sued on an obligation which, if it exists, is solidary may seek to enforce contribution, if he is cast, against his solidary co-debtor by making him a third party defendant in the suit, ... whether or not the third party defendant was sued by the plaintiff initially."
This civil code article should be read in connection with LSA-C.C.P. Art. 1113 which reads in pertinent part:
"A defendant who does not bring in as a third party defendant a person who is liable to him for all or part of the principal demand does not on that account lose his right or cause of action against such person, unless the latter proves that he had means of defeating the action which were not used, because the defendant either failed to bring him in as a third party defendant, or neglected to apprise him that the suit had been brought...."
[2] Under the new obligations articles, enacted by Acts 1984, No. 331, § 1, effective Jan. 1, 1985, the result would be the same.

LSA-C.C. Art. 1794 states:
"An obligation is solidary for the obligors when each obligor is liable for the whole performance. A performance rendered by one of the solidary obligors relieves the others of liability toward the obligee."
LSA-C.C. Art. 1797 states:
"An obligation may be solidary though it derives from a different source for each obligor."