**DATAMATIC, INC., Plaintiff-Appellant,**

v.

**INTERNATIONAL BUSINESS MACHINES CORPORATION, Defendant-Appellee.**

No. 85–4527.

United States Court of Appeals, Fifth Circuit.

July 28, 1986.

---

Lisa Brener Cusimano, Perret & Castle, Henry C. Perret, Jr., Lafayette, La., for plaintiff-appellant.

Robert E. Barkley, Jr., Sessions, Fishman, Rosenson, Boisfontaine, Nathan & Winn, New Orleans, La., for defendant-appellee.

Before GEE, RUBIN, and GARZA, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Invoking the Louisiana civil-law doctrine of redhibition, La.Civ.Code art. 2520, a purchaser of second-hand computer equipment sued the computer manufacturer to recover purely economic losses resulting from alleged defects in the equipment. The manufacturer defended on the ground that its

sales contracts with the original purchasers of the computer equipment included warranty limitations restricting its liability. The district court granted summary judgment for the manufacturer. While the Louisiana cases hold that a buyer who purchases a used product from one who is not a dealer in that product may recover in redhibition from the manufacturer with whom it is not in privity, they are not clear concerning whether the action is based on the buyer's own right or is derived from subrogation to the rights of its vendor. Under either theory, however, a warranty limitation legally operative against the original consumer-buyer is effective against all successive buyers, and we therefore affirm the district court.

## I.

In the late 1960s, IBM manufactured certain computer components. It initially sold these components to four different corporations under contracts of sale that expressly limited IBM's warranty liability. The contracts stated:

> For one year from the date of installation, IBM warrants the machines ... to be free from defects in material and workmanship.

> IBM will not be liable for personal injury or property damages except personal injury or property damage caused by IBM's negligence. IBM shall in no event have obligations or liabilities for consequential damages.

> *The foregoing Warranties and Limitations are exclusive remedies and are in lieu of all other warranties express or implied, including but not limited to the implied warranty of merchantability.* (Emphasis in original.)

ITEL, a Dallas-based computer leasing company, subsequently acquired the IBM components and assembled them into a tape system, which it sold to Datamatic, a Louisiana corporation, in 1974 and 1975 for $75,000. In the contract of sale, ITEL excluded all implied warranties but assigned to Datamatic any rights that ITEL still had against IBM.

Datamatic then made a computer service agreement with IBM. Datamatic contends that, despite regular service by IBM, one of the tape systems continuously malfunctioned from the date it was installed until June 1982, when, six or seven years after Datamatic had purchased the equipment and almost fifteen years after IBM had originally sold it, an IBM engineer discovered a defect in the "terminator," a part incorporated in one of the tape drives. The engineer found that some of the pins or terminals in the terminator had been "wire-wrapped" rather than soldered. Datamatic contends that, once the pins were soldered, the equipment functioned properly.

A few days after this 1982 equipment repair, Datamatic demanded a refund from IBM for all of the maintenance charges attributable to the allegedly defective terminator. When negotiations proved unsuccessful, Datamatic sued IBM in June 1983 in Louisiana state court, alleging that the unsoldered pins constituted a redhibitory defect as defined in La.Civ.Code art. 2520. Datamatic claimed that it was entitled to rescind its purchase of the tape system and to recover these damages: the purchase price of the defective equipment; lost profits; damage to its business reputation; costs of rerunning work; costs incurred as a result of computer "down time"; and maintenance fees paid to IBM. These claims totalled over $960,000.

IBM removed the suit to federal court, and afterwards moved for summary judgment. The district court applied Louisiana law and held that Datamatic did have a claim in redhibition against IBM. The court concluded, however, that the basis of Datamatic's right to recover against IBM was its subrogation to any rights against IBM that ITEL, Datamatic's seller, may have had under the contracts it or its predecessors had with IBM. Finding that the warranty limitations contained in these contracts would have precluded ITEL's re-

covery from IBM, the court concluded that Datamatic's claim was similarly barred.[1]

## II.

IBM contends that New York law applies to Datamatic's claim because the original contracts of sale for the computer equipment provided that the agreement would be governed by New York law. Datamatic argues that it cannot be bound to a choice-of-law provision in a contract to which it was not a party, and contends that application of Louisiana choice-of-law principles requires that the court apply Louisiana law. The district court agreed, deciding that redhibition cases have been treated like tort actions for purposes of conflicts analysis.[2] However, we need not wrestle with this choice-of-law question. Datamatic concedes that it would not have a cause of action against IBM under New York law in the absence of privity. Its only hope of recovery lies in the Louisiana law of redhibition. Because we find that Datamatic cannot recover under Louisiana law, we do not consider the possible applicability of New York law.[3]

## III.

Sales of goods in Louisiana carry an implied warranty that the goods are free of hidden defects ("redhibitory vices") and are reasonably fit for their intended use.[4] This warranty against redhibitory vices arises out of the contract of sale.[5] If a redhibitory vice exists, the buyer may demand reduction of the purchase price[6] or rescission of the sale.[7] If, however, the seller knew of the defective nature of the product and concealed the vice from the buyer, he is considered to be in bad faith, and the law permits the buyer to recover damages and attorneys' fees in addition to the purchase price.[8] A manufacturer is presumed to know of the defects in its products and is therefore always in constructive "bad faith."[9]

Datamatic's claim against IBM is unusual because it involves factors that are not typically found together in a redhibition suit: a claim against a nonseller manufacturer of allegedly defective equipment purchased second-hand from an intermediate owner who was not a dealer in the manufacturer's products. Therefore, the issue is whether a buyer in Datamatic's situation

---

1. *Datamatic, Inc. v. International Business Mach. Corp.,* 613 F.Supp. 715 (W.D.La.1985).

2. *But cf. Alexander v. Burroughs Corp.,* 359 So.2d 607 (La.1978) (warranty against redhibitory vices is implied in the contract of sale).

3. *See United States v. Automobile Club Ins. Co.,* 522 F.2d 1, 2 (5th Cir.1975); *Evra Corp. v. Swiss Bank Corp.,* 673 F.2d 951, 954–55 (7th Cir.), *cert. denied,* 459 U.S. 1017, 103 S.Ct. 377, 74 L.Ed.2d 511 (1982).

4. La.Civ.Code arts. 2476, 2520; *Hob's Refrigeration & Air Conditioning, Inc. v. Poche,* 304 So.2d 326, 327 (La.1974). La.Civ.Code art. 2520 reads as follows:
   *Redhibition* is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.

5. La.Civ.Code arts. 1764(A)(2), 2520. The articles dealing with redhibition appear in section 3 of Chapter 6, Title VII, Book III of the Civil Code in a chapter entitled "Of the Obligations of the Seller."

6. La.Civ.Code art. 2541; *Sanders v. Sanders Tractor Co., Inc.* 480 So.2d 913, 915 (La.App. 1985).

7. La.Civ.Code art. 2531; *Rey v. Cuccia,* 298 So.2d 840, 842–43 (La.1974). The seller, however, is entitled to a credit to compensate him for the buyer's use of the goods. *See Womack & Adcock v. 3M Business Products Sales,* 316 So.2d 795, 797 (La.App.1975); *Dunlap v. Chrysler Motors Corp.,* 299 So.2d 495, 498 (La.App.), *writ denied,* 302 So.2d 38 (La.1974). *But see Alexander v. Burroughs Corp.,* 359 So.2d 607, 610–12 (La.1978).

8. La.Civ.Code art. 2545. *See* Hersbergen, *Unconscionability: The Approach of the Louisiana Civil Code,* 43 La.L.Rev. 1315, 1354 (1983); *Breaux v. Winnebago Indus., Inc.,* 282 So.2d 763, 770 (La.App.1973).

9. *Alexander v. Burroughs Corp.,* 359 So.2d 607, 609 (La.1978). *See also Moreno's Inc. v. Lake Charles Catholic High Schools, Inc.,* 315 So.2d 660, 663–64 (La.1975); *Newman v. Dixie Sales and Serv.,* 387 So.2d 1333, 1336 (La.App.1980).

is entitled to bring a claim in redhibition against the manufacturer.

Privity of contract is no longer a prerequisite to a redhibitory action under the Civil Code. The Louisiana Supreme Court abolished that requirement in *Media Production Consultants, Inc. v. Mercedes-Benz of North America.*[10] Adopting a "consumer-protection" rule, the court there allowed a buyer who had purchased a defective new automobile from a dealer to recover directly from the car's manufacturer. Thus, lack of privity is irrelevant when the claim involves defects in equipment purchased new by the plaintiff from a dealer who is franchised by the manufacturer. It is not as clear whether the buyer of used equipment who buys from an intermediate buyer and user has the same right. Louisiana courts have held that a buyer of used equipment does have an action in redhibition against the seller of that equipment, but the warranty is not as extensive as that implied in sales of new goods.[11] One Louisiana court of appeal has permitted the buyer of used goods an action in redhibition against the manufacturer when the manufacturer's representatives, its dealer, and the second seller, all had actual knowledge of the defect before the resale, and the defect became known during the time when the manufacturer's express warranty was in effect.[12] Considering *Media*'s emphasis on consumer protection, however, we see no reason why a Louisiana court would limit a buyer's action in redhibition to such circumstances. We therefore agree with the district court that a buyer of used goods is entitled to bring a redhibitory action against the goods' manufacturer.

## IV.

■ The action in redhibition is inherently contract-based. Both the theory of the action and the relief available differ from those applicable to a suit in tort. Datamat-ic, however, asserts only a claim in redhibition, perhaps because of statute of limitations problems or perhaps because of differences in allowable remedies. We must, therefore, determine the extent of Datamatic's contractual (redhibitory) rights against IBM. IBM argues that Datamatic can recover only so much as its predecessors in title could have recovered. IBM's thesis is that a buyer proceeding "in contract" against a seller with whom it is not in privity has no rights of its own but is merely subrogated to the rights of its seller. It contends that, in consequence, the warranty-limitation provisions in the contracts it executed with the original buyers are, assuming their validity, equally operative against Datamatic. Datamatic, relying on *Media*, contends that its rights are not restricted to those of ITEL, its seller, but arise independently from those of intervening buyers and, for this reason, the provisions in the IBM sales contracts have no effect against it.

*Media* was a suit by the buyer of a defective automobile to rescind the sale of the automobile and to recover the purchase price from the manufacturer. The buyer had purchased the car from a dealer franchised by the manufacturer who, at the time of suit, was defunct. With its purchase the buyer had received a manufacturer's express warranty containing a clause stating that it superseded all other warranties, express or implied. Nevertheless, the Louisiana Supreme Court permitted the buyer to seek rescission directly from the manufacturer for breach of implied warranty. The dealer too had waived the benefit of all implied warranties against the manufacturer, but the court did not discuss whether those warranty-limitation provisions were valid and the effect, if any, this had on the buyer. Instead, the court referred only to the warranty-limitation provisions that the manufacturer had sought

---

10. 262 La. 80, 262 So.2d 377 (1972).

11. *Sanders v. Sanders Tractor Co., Inc.,* 480 So.2d 913, 915 (La.App.1985); *Gisclair v. Cajun Trucking, Inc.,* 421 So.2d 339, 341 (La.App. 1982).

12. *Huffman-Euro Motors, Inc. v. Physical Therapy Serv., Ltd.,* 373 So.2d 565 (La.App.1979).

to impose vis-a-vis the buyer, and found these to have no effect on the implied warranty of fitness imposed on the manufacturer by the Civil Code.

The theoretical basis for the *Media* decision, however, is unclear.[13] Although the plaintiff's cause of action was clearly in redhibition,[14] a civil-law concept, the court cited common-law cases as authority for its adoption of a consumer-protection rule that allows a buyer to recover "whether the suit be strictly in tort or upon implied warranty."[15] The majority's choice of language, reliance on common-law authority, and failure to adhere to the civil-law understanding of the redhibitory action precipitated confusion and fueled Datamatic's contentions in this case.

The uncertainty as to the theoretical foundation of the *Media* opinion is heightened by Justice Dixon's concurrence. Justice Dixon found that the plaintiff could have recovered under what he characterized as another theory: it was subrogated, pursuant to La.Civ.Code art. 2503,[16] to the rights of its seller against the manufacturer. He then found that the contract between the manufacturer and the dealer did not contain a valid waiver of the implied warranty.[17] Because the concurrence suggests that subrogation provides an additional, but not exclusive, basis on which the buyer could recover, it implies that the majority opinion rests on some broader tort-like conception. If that were the ma-

jority's basis for recovery, it might be argued, as Datamatic here does, that provisions in a contract between the manufacturer and the original purchaser are not binding on subsequent buyers.

Whatever be the basis of the *Media* opinion, we do not think that the decision accords a pure tort action but with redhibition remedies. It would be anomalous if Louisiana law permitted a buyer of used goods from a casual seller to obtain greater rights in redhibition than the original purchasers of the equipment who bought it new from the manufacturer or the manufacturer's franchised dealer. Even though rights of action in Louisiana are grounded in the Civil Code, Louisiana is not unlike other states in providing both tortious[18] and contractual[19] bases for claims against the manufacturers of defective products. If *Media* is to be harmonized with the rest of Louisiana jurisprudence, it must be read as according a cause of action grounded in contract. Indeed, the *Media* court had no need to create a tort-based remedy (if that is what it did) because, in a case decided a year earlier, the court had permitted a plaintiff to recover from the manufacturer of a defective product by using classic, tort-based, products liability theory.[20] Therefore, the court's reference in *Media* to tort-based causes of action can only be viewed as gratuitous because by that time

---

**13.** *See Smith v. Max Thieme Chevrolet Co.,* 315 So.2d 82, 86 (La.App.1975); Barham, *Redhibition: A Comparative Comment,* 49 Tul.L.Rev. 376, 381–82 (1975); Redmann, *Redhibition in Louisiana: Its Uses and Its Problems Today,* 50 Tul.L.Rev. 530, 541–43 (1976); Robertson, *Manufacturers' Liability for Defective Products in Louisiana Law,* 50 Tul.L.Rev. 50, 86–88 (1975); Note, *Wholesale Distributor Liable for Retail Price of Defective Foreign Automobile,* 47 Tul.L. Rev. 473, 473–79 (1973).

**14.** *See Media Production Consultants, Inc. v. Mercedes-Benz of N. Am., Inc.,* 247 So.2d 266, 268 (La.App.1971) (original court of appeal decision), and 264 So.2d 686, 687 (La.App.1972) (court of appeal decision on remand).

**15.** *Media,* 262 So.2d at 381.

**16.** Article 2503 reads in part:

> But whether warranty be excluded or not the buyer shall become subrogated to the seller's rights and actions in warranty against all others.

Although found in the section of the Civil Code dealing with eviction, article 2503 has been applied to actions in redhibition. *McEachern v. Plauche Lumber & Constr. Co.,* 220 La. 696, 57 So.2d 405 (1952); *DeSoto v. Ellis,* 393 So.2d 847, 849–50 (La.App.1981).

**17.** *Media,* 262 So.2d at 382.

**18.** La.Civ.Code art. 2315; *Weber v. Fidelity & Cas. Ins. Co.,* 259 La. 599, 250 So.2d 754 (1971).

**19.** *See supra* note 5.

**20.** *Weber v. Fidelity & Cas. Ins. Co.,* 259 La. 599, 250 So.2d 754 (1971).

privity was a barrier solely to claims in redhibition.

Subsequent Louisiana Supreme Court cases "made it clear that the consumer's cause of action [under *Media*] is for the most part governed by Civil Code principles pertaining to the redhibitory action." [21] Although one commentator believes *Media* should be read broadly, unfettered by concepts of contract law,[22] others are convinced that *Media* rests on contractual theories.[23] Though these commentators are unsure whether a buyer's cause of action should be described as one of subrogation to or as transmission of his seller's rights against the manufacturer,[24] most post-*Media* Louisiana cases have assumed that a buyer's right to recover from a seller with whom he is not in privity results from his subrogation, under La.Civ.Code art. 2503, to his seller's rights against the original manufacturer.[25] Although no Louisiana court has enforced a limited-warranty provision against a subsequent buyer under article 2503, the subrogation theory has been applied to hold a subsequent buyer bound by the prescriptive period applicable to his seller.[26]

The interpretation of *Media* as adopting a subrogation theory does not fully consider the conflicting parts of that opinion. However, both the structure of the Civil Code and the interpretive decisions of the Louisiana intermediate appellate courts persuade us that *Media* can best be explained by that conception. Whether or not we are correct in this conclusion, we do not think that *Media* implies that the ultimate buyer has a sui generis action against the manufacturer that springs full blown from the last act of sale like some goddess-like creation from the brow of Zeus. When an informed buyer purchases used equipment from a seller who is not a dealer of the manufacturer, his claim against the manufacturer, whether based on subrogation to his seller's rights in redhibition against the manufacturer of the equipment or on some other theory, is no greater than the rights of the original buyer.

## V.

■ Louisiana law permits a seller to limit or exclude the implied warranty against redhibitory defects.[27] To be effective such a limitation must be contained in the contract of sale (or similar document), be clear and unambiguous, and must be brought to the buyer's attention or explained to him.[28]

**21.** *Smith v. Max Thieme Chevrolet Co.,* 315 So.2d 82, 86 (La.App.1975) (citing *Rey v. Cuccia,* 298 So.2d 840 (La.1974)). *See also Moreno's, Inc. v. Lake Charles Catholic High Schools, Inc.,* 315 So.2d 660, 663 (La.1975).

**22.** *See* Robertson, *supra* note 13, at 87–88; *see also Continental Ins. Co. v. International Harvestor Co.,* 412 So.2d 616, 617 (La.App.1982) (implying a tort basis for the cause of action).

**23.** Barham, *supra* note 13, at 381–84; Redmann, *supra* note 13, at 540.

**24.** *See, e.g., Peltier v. Seabird Indus., Inc.,* 309 So.2d 343, 344–45 (La.1975) (Barham, J., concurring in writ denial); Barham, *supra* note 13, at 381–84; Redmann, *supra* note 13, at 540.

**25.** *See, e.g., Moreno's, Inc. v. Lake Charles Catholic High Schools, Inc.,* 315 So.2d 660, 663 (La.1975); *Theriot v. Commercial Union Ins. Co.,* 478 So.2d 741, 745–46 (La.App.1985); *Landry v. Baton Rouge Lumber Co.,* 434 So.2d 1144, 1145–46 (La.App.1983); *DeSoto v. Ellis,* 393 So.2d 847, 849 (La.App.1981); *Huffman-Euro Motors, Inc.*

*v. Physical Therapy Serv., Ltd.,* 373 So.2d 565, 569–70 (La.App.1979). *See also Aizpura v. Crane Pool Co., Inc.,* 449 So.2d 471, 472–73 (La. 1984).

**26.** *Desoto v. Ellis,* 393 So.2d 847, 840–50 (La. App.1981).

**27.** *See* La.Civ.Code arts. 2503, 1764(A)(2), & 11. *See also Hob's Refrigeration & Air Conditioning, Inc. v. Poche,* 304 So.2d 326, 327 (La.1974); *Rey v. Cuccia,* 298 So.2d 840, 842 (La.1974); *Prince v. Paretti Pontiac Co., Inc.,* 281 So.2d 112, 117 (La.1973). *See also Fernandez v. Miller Richards Aircraft Sales, Inc.,* 487 So.2d 660, 664–65 (La.App.1986); *California Chem. Co. v. Lovett,* 204 So.2d 633, 636 (La.App.1967).

**28.** *Fontenot v. F. Hollier & Sons,* 478 So.2d 1379, 1386 (La.App.1985), *writ granted,* 481 So.2d 1326 (La.1986); *Hendricks v. Horseless Carriage, Inc.,* 332 So.2d 892, 894 (La.App.1976); *Anderson v. Bohn Ford, Inc.,* 291 So.2d 786, 788 (La. App.1973), *writ denied,* 294 So.2d 829 (La.1974). *See* Hersbergen, *supra* note 8, at 1365; Comment, *Modification or Renunciation of Warranty*

Warranty limitations are generally construed against manufacturers.[29] For that reason, limitation attempts have often been ineffective.[30] In this case, however, the IBM sales were to commercially sophisticated parties. Like its predecessor owners, Datamatic is held to a higher standard than an unknowledgeable consumer.[31] The language of the warranty-limitation provisions was conspicuous and should have been clear and unambiguous. Datamatic was on notice of the existence of the original contracts and their terms through the language in the warranty provisions of its contracts with ITEL. In such cases, Louisiana courts are more willing to find that the waiver was clear and unambiguous, and that the buyer's signature is evidence that its terms and conditions were brought to his attention.[32]

In *California Union Insurance Company v. Bechtel Corporation,*[33] a Louisiana court upheld a warranty-limitation provision included in a contract for the sale of an electric transformer between Bechtel and Westinghouse corporations. After the contractual warranty had expired, the transformer exploded. The court stated:

> The contract under consideration was a commercial undertaking between two highly sophisticated parties. While courts are reluctant to enforce warranty limitations on consumers they recognize that parties such as Bechtel ... and Westinghouse are free to bargain as they see fit and are bound by their contracts.[34]

Under the circumstances of this case, there is no reason why the warranty limitations cannot and should not now be upheld.

■ Datamatic constructs an inventive argument to support its contention that manufacturers are not permitted to limit the implied warranty against redhibitory defects. Because knowledge of the defects in its product is imputed to the manufacturer, who is hence considered to be a "bad faith" seller, Datamatic contends that this imputed knowledge is the equivalent of fraud for purposes of La.Civ.Code art. 2548. That article provides that a seller who has committed fraud may not benefit from the renunciation of the warranty against redhibitory defects. This equivalence, however, is suggested only in one commentary,[35] has been rejected in another,[36] and has never been adopted by a Louisiana court. We are unpersuaded. Although ingenious, this scheme seems to us to equate different concepts created for different purposes.

■ Datamatic also contends that La. Civ.Code art. 2531 supports its position. Article 2531 allows a seller who has been held liable for redhibitory defects in goods he has sold to recover from the manufacturer despite warranty limitations in the contract made with the manufacturer.[37] Datamatic argues that the article reflects the policy of the state that manufacturers cannot absolve themselves from their obligation to warrant their products. As the district court pointed out, however, article

---

*in Louisiana Sales Transactions,* 46 Tul.L.Rev. 894, 895 (1972).

29. *See, e.g., Dunlap v. Chrysler Motors Corp.,* 299 So.2d 495, 498 (La.App.), *writ denied,* 302 So.2d 38 (La.1974); *Wolfe v. Henderson Ford, Inc.,* 277 So.2d 215, 217 (La.App.1973). *See also* Hersbergen, *supra* note 8, at 1365.

30. *See, e.g., Thibodeaux v. Meaux's Auto Sales, Inc.,* 364 So.2d 1370, 1371 (La.App.1978). *See generally* Robertson, *supra* note 13, at 94; Redmann, *supra* note 13, at 544–46; Hersbergen, *supra* note 8, at 1363; Campbell, *The Remedy of Redhibition: A Cause Gone Wrong,* 22 La.B.J. 27, 33 (1974).

31. *See* Hersbergen, *supra* note 8, at 1366–67.

32. *Louisiana Nat'l Leasing Corp. v. ADF Serv., Inc.,* 377 So.2d 92, 96 (La.1979); *Anderson v. Bohn Ford, Inc.,* 291 So.2d 786, 790–91 (La.App. 1973), *writ denied,* 294 So.2d 829 (La.1974). *See also* Barham, *supra* note 13, at 386–89.

33. 473 So.2d 861 (La.App.), *writ denied,* 477 So.2d 1128 (La.1985).

34. 473 So.2d at 866–67.

35. Hersbergen, *supra* note 8, at 1355–1358.

36. Campbell, *supra* note 30, at 33.

37. *See, e.g., Cox v. Lanier Bus. Prod., Inc.,* 423 So.2d 690, 694 (La.App.1982), *writ denied,* 429 So.2d 129 (La.1983).

2531 by its own terms is not applicable if the buyer's immediate seller was not held liable. We find no Louisiana cases intimating another view.

In sum, IBM's warranty limitations were effective against the original buyers of the computer equipment. Because Datamatic derivatively obtained title to the equipment from the original sales contracts, its cause of action against IBM is limited by the terms of those contracts. The warranty limitations therefore are effective against Datamatic as well.

## VI.

Datamatic, seeking its last resort short of defeat, urges that, if we do not agree with its position, we certify the choice-of-law and redhibition questions to the Louisiana Supreme Court. Such certification would extend to that court an invitation to clarify its prior decision but we are convinced it would not affect the result. We therefore do not impose on that court.

## VII.

We hold that Datamatic may recover against IBM only what its predecessors in title could have recovered. Although it need not be in privity to recover its economic losses under Louisiana law, that law is not infinitely generous. The legally enforceable warranty provisions duly executed by the parties to the original transaction are binding on Datamatic because it derives its rights against IBM only from its subrogation to the rights of its sellers who were not dealers of IBM equipment and were not placed by IBM in a position to represent the qualities of its products.

We therefore AFFIRM the judgment of the district court. We express no opinion whether Datamatic might have maintained a delictual action against IBM for products liability under article 2315,[38] for no such claim was pleaded.

38. *See Weber v. Fidelity & Cas. Ins. Co.,* 259 La. 599, 250 So.2d 754 (1971), and its progeny.